# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF TEXAS

## DALLAS DIVISION

| | |
|---|---|
| AMERICAN ACADEMY OF EMERGENCY MEDICINE PHYSICIAN GROUP,<br><br>Petitioner,<br><br>v.<br><br>TENET HEALTHCARE CORPORATION,<br><br>Respondent. | Miscellaneous Action<br>Case No.:<br><br>**NOTICE OF MOTION AND MOTION TO COMPEL TENET IIEALTIICARE CORPORATION TO PRODUCE DOCUMENTS IN RESPONSE TO SUBPOENA DUCES TECUM [F.R.C.P. 45]**<br><br>**Date:**<br>**Time:**<br>**Department:**<br>**Courtroom:**<br><br>Action Filed:  December 20, 2021 |

TO THE COURT, RESPONDENT AND ITS ATTORNEYS OF RECORD:

Please take notice that on _____ at _____, or as soon thereafter as the parties may be heard, Petitioner AMERICAN ACADEMY OF EMERGENCY MEDICINE PHYSICIANS GROUP ("Petitioner")  will move this Court, at the United States Courthouse located at 1100 Commerce St., Dallas, Texas, 75242, courtroom _____, for an order pursuant to F.R.C.P. 45(d)(2)(B)(i) compelling Respondent Tenet Healthcare Corporation ("Respondent") to comply with the subpoena duces tecum served on it by Petitioner on November 23, 2022 ("Subpoena") by producing all responsive, relevant, and nonprivileged documents in its possession, custody, or control in full by May 1, 2023, or as soon as the Court may order, along with a privilege log that complies with FRCP 45(e)(2) describing "the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information

1   itself privileged or protected, will enable the parties to assess the claim" of privilege ("Motion to

2   Compel").

3       In compliance with F.R.C.P. 45(a)(2) Petitioner issued the Subpoena from the United

4   States District Court, Northern District of California where Petitioner is the Plaintiff in a pending

5   action styled as *American Academy of Emergency Physicians Group v. Envision Health Care*

6   *Corporation et al.,* N.D. Cal. Case No. 3:22-cv-00421-CRB ("Underlying Action"). Petitioner

7   brings this Motion to Compel in this Court, which is the court for the district where compliance

8   is required by the underlying Subpoena, as Respondent's principal place of business and

9   headquarters is in Dallas, Texas. "Under the federal rules, as amended in 2013, a subpoena must

10  be issued by the court where the underlying action is pending, but challenges to the subpoena are

11  to be heard by the district court encompassing the place where compliance with the subpoena is

12  required." *Europlay Capital Advisors, LLC v. Does*, 323 F.R.D. 628, 629 (C.D. Cal. 2018).

13  "[T]here is 'no question' that the proper district to hear a motion to compel compliance with

14  a Rule 45 nonparty subpoena is where the nonparty is headquartered." *Id.* at 630 (quoting *Music*

15  *Grp. Macao Commercial Offshore Ltd. V. Does*, 82 F. Supp. 3d 979, 982, 984 (N.D. Cal. 2015).)

16

17      Despite the Subpoena being properly issued and served on Respondent on November 23,

18  2022, Respondent failed to fully comply with the Subpoena to date. Respondent initially served

19  boilerplate objections to the Subpoena on December 1, 2022, indicating that Respondent would

20  withhold production for the majority of requests on the basis of alleged undue burden associated

21  with the production. Counsel for Petitioner and Respondent met and conferred regarding the

22  objections in anticipation of the December 28, 2022 date of compliance, and several times

23  thereafter by e-mail, letter, and video conference on a regular basis.

24      The majority of responsive documents are communications internal to Respondent, and

25  communications between Respondent, Envision Physicians Services LLC, and physician groups

26  concerning the negotiations of exclusive emergency physician services contracts and the provision

27  of exclusive emergency physician services.

28

NOTICE OF MOTION AND MOTION TO COMPEL TENET HEALTHCARE CORPORATION TO PRODUCE
DOCUMENTS IN RESPONSE TO SUBPOENA DUCES TECUM [F.R.C.P. 45]

Respondent's counsel complained that the e-mail inboxes they needed to search and review contained a voluminous amount of communications. After Petitioner agreed to assist Respondent with its production by providing some suggested keywords Respondent could use to search the e-mail inboxes of Respondent's custodians, Respondent has made only piecemeal document productions of a few pages at a time without indication of how many documents Respondent still needed to review. Respondent granted itself permission to make the production on a "rolling basis" but was unable to provide Petitioner's counsel with a date certain that the production could be completed. More than three months have passed since Respondent was first served with the Subpoena. The pace at which Respondent is complying with the Subpoena is unreasonable, and also unacceptable because Petitioner's fact discovery deadline approaches in July 2023. Petitioner cannot afford to delay enforcement of the Subpoena any further, making this Motion to Compel necessary.

Respectfully submitted,

KELLEY CLARKE, PC

By: _Matthew Clarke_

Matthew Clarke (Bar No. 24070965)
matt@kelleyclarke.com
Matthew P. Harper (Bar No. 24037777)
mharper@kelleyclarke.com
603 E. Broadway Street
Prosper, Texas 75078
Tel. (972) 253-4440
Fax. (866) 611-9852
**Attorneys for Petitioner American Academy of Emergency Physicians Group, Inc.**

NOTICE OF MOTION AND MOTION TO COMPEL TENET HEALTHCARE CORPORATION TO PRODUCE
DOCUMENTS IN RESPONSE TO SUBPOENA DUCES TECUM [F.R.C.P. 45]

<u>**Memorandum of Points and Authorities**</u>

**1. <u>Nature of Underlying Action</u>**

In compliance with F.R.C.P. 45(a)(2) Petitioner American Academy of Emergency Medicine Physicians Group, Inc. ("Petitioner") issued the business records subpoena ("Subpoena") on Respondent Tenet Healthcare Corporation ("Respondent") from the United States District Court, Northern District of California where Petitioner is the Plaintiff in a pending action styled as *American Academy of Emergency Physicians Group v. Envision Health Care Corporation et al.,* N.D. Cal. Case No. 3:22-cv-00421-CRB ("Underlying Action").

In the Underlying Action, Petitioner alleges that the defendants Envision Healthcare Corporation and Envision Physician Services, LLC ("Defendants") engaged in the corporate practice of medicine in California, which is prohibited under California law under Business and Professions Code § 2400 and as recognized in case law and California attorney general opinions. Petitioner is a management services organization providing practice management services for emergency physician medical groups on the business and administerial side.

Defendants function as an alter ego of each other. While Envision Physician Services LLC purportedly acted only as a management services organization for physician groups, in actuality Defendants practice(d) medicine in California by, *inter alia*:

- Exercising control over medical billing, clinician staffing, and related services;
- Exercising control over hiring, selection, termination, compensation, and discipline of physicians hired by the medical groups Defendants contract with;
- Exercising control over medical best practices, benchmarks, and quality of care control that Defendants require the physicians to follow and thereby influence professional medical judgment;
- Use of illegal restrictive covenants in the employment agreements of California physicians;
- appointing Defendants' own management personnel as medical directors of the medical groups for which they provide practice management services and retaining the right to purchase; and

-4-

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

- paying or offering to pay consideration to hospitals to induce the grant of exclusive emergency services agreements to the medical groups Defendants controlled.

Petitioner provided practice management services to Placentia Linda Emergency Physicians medical group ("PLEP"), which provides emergency medicine services at Placentia Linda Hospital. On November 1, 2021, Petitioner's contract with PLEP expired, and instead of renewing the exclusive emergency services contract with PLEP, Placentia Linda Hospital signed a new contract with Envision's affiliate medical groups Premier Emergency Physicians of California Medical Group ("Premier") and California Em-i Medical Services, AMC ("Em-I").

Petitioner alleges that Defendants' acts in violation of California's ban on the corporate practice of medicine ("CPOM") induced Placentia Linda Hospital to forgo renewing its contract with PLEP, and costing Petitioner its own contract with PLEP. Petitioner brought suit seeking an injunction and declaratory relief pursuant to California Business and Professions Code § 17200, alleging that Defendants CPOM is an unlawful business practice.

Respondent operates hospitals throughout the United States. Among others, Respondent operates hospitals in California doing business as Lakewood Regional Medical Centner, Fountain Valley Regional Hospital, Los Alamitos Medical Center, and Placentia Linda Hospital. Each of the aforementioned hospitals contracts with physician groups for which Defendants provide practice management services.

Attached as Exhibit "O" to the declaration of Gerald S. Richelson filed in support herewith is the First Amended Complaint, the operative pleading in the Underlying Action, which contains far more detail regarding Defendants violations of California's ban on the CPOM. The Northern District of California in the Underlying Action examined Petitioner's allegations and concluded that they plausibly plead a violation of California's ban on the CPOM.

> The FAC includes numerous allegations that support the theory
> that Envision violates the CPOM. See, e.g., ¶¶ 38-45 (detailing
> ways in which Envision exercises control over professional
> medical groups). Amicus California Medical Association asserts
> that "[a] significant portion of the allegations in this action fall
> within CPOM's proscription against activities and practices
> affecting a physician's professional judgment. Indeed, there are

NOTICE OF MOTION AND MOTION TO COMPEL TENET HEALTHCARE CORPORATION TO PRODUCE
DOCUMENTS IN RESPONSE TO SUBPOENA DUCES TECUM [F.R.C.P. 45]

allegations in the [FAC] that, if proven, demonstrate <u>classic CPOM violations</u>." CMA Amicus at 6 (emphasis added). The Court agrees.

*Am. Acad. of Emergency Med. Physician Grp., Inc. v. Envision Healthcare Corp.*, No. 22-cv-00421-CRB, 2022 U.S. Dist. LEXIS 102766, at *32-33 (N.D. Cal. May 27, 2022)

The court also recognized that the allegations are complex and involve many parties/entities. In considering Envision's argument that the California Medical Board should have exclusive jurisdiction to decide the issues presented in the case the court wrote:

> This case is complicated because Envision's reach is extensive. <u>See</u> Reply at 6 ("None of the cases involved, as here, a complaint purporting to challenge practices allegedly extending throughout the State of California, involving multiple facilities, multiple contracts, and multiple entities, as this case on its face does."). But this case is also complicated because of the numerous issues the FAC raises, not all of which involve CPOM.

*Envision Healthcare Corp.* at *29-30.

Necessarily this also means the case is document intensive and requires a commensurate volume of discovery to parties and non-parties.

**2.   The Subpoena seeks production of relevant documents and information.**

Respondent is in possession of relevant and discoverable information: contracts with medical groups affiliated with and controlled by Defendants for exclusive emergency physician services and anesthesiology services, communications with Defendants directly and those medical groups to negotiate the terms of those contracts, discuss the services that the medical groups and Defendants render, etc. Petitioner propounded the following eleven document requests in the Subpoena to elicit production of these records:

Category 1:
All DOCUMENTS CONCERNING each EXCLUSIVE EMERGENCY SERVICES CONTRACT between any TENET HEALTHCARE and each PROFESSIONAL MEDICAL CORPORATION operating in California for which DEFENDANTS or their affiliates or agents provided PRACTICE MANAGEMENT SERVICES for in the last (5) years.

Category 2:
All COMMUNICATIONS with DEFENDANTS in California concerning the acquisition, termination, or modification of EXCLUSIVE EMERGENCY SERVICES CONTRACTs between each PROFESSIONAL MEDICAL CORPORATION operating in California for which DEFENDANTS or their affiliates or agents provided PRACTICE MANAGEMENT SERVICES for in the last (5) years and TENET HEALTHCARE.

Category 3:
All COMMUNICATIONS CONCERNING DEFENDANTS' acquisition of the EXCLUSIVE EMERGENCY SERVICES CONTRACT at Placentia Linda Hospital in or around November 2021.

Category 4:
All DOCUMENTS reflecting DEFENDANTS' advertisements, brochures, or solicitation documents for emergency department contracts in California for the last 5 years.

Category 5:
All DOCUMENTS or COMMUNICATIONS CONCERNING negotiations between TENET HEALTHCARE and Premier Emergency Physicians of California Medical Group, P.C. CONCERNING the award of EXCLUSIVE EMERGENCY SERVICES CONTRACTs within the State of California.

Category 6:
All DOCUMENTS or COMMUNICATIONS CONCERNING negotiations between TENET HEALTHCARE and California EM-I Medical Services CONCERNING the award of EXCLUSIVE EMERGENCY SERVICES CONTRACTs within the State of California.

Category 7:
All DOCUMENTS or COMMUNICATIONS CONCERNING negotiations between TENET HEALTHCARE and California EM-I Medical Services CONCERNING subsidies for anesthesiology coverage at TENET HEALTHCARE owned or managed hospitals within the State of California.

Category 8:
All COMMUNICATIONS with PLACENTIA LINDA EMERGENCY PHYSICIANS, INC. concerning the acquisition, termination, or modification of EXCLUSIVE EMERGENCY SERVICES CONTRACTs between PLACENTIA LINDA EMERGENCY PHYSICIANS, INC. and TENET HEALTHCARE.

Category 9:
All COMMUNICATIONS with the AMERICAN ACADEMY OF EMERGENCY MEDICINE PHYSICIANS GROUP, Inc. concerning the acquisition, termination, or modification of EXCLUSIVE EMERGENCY SERVICES CONTRACTs between each PROFESSIONAL MEDICAL CORPORATION operating in California for which the AMERICAN ACADEMY OF EMERGENCY MEDICINE PHYSICIANS GROUP, Inc. or its affiliates or agents provided PRACTICE MANAGEMENT SERVICES for in the last

NOTICE OF MOTION AND MOTION TO COMPEL TENET HEALTHCARE CORPORATION TO PRODUCE DOCUMENTS IN RESPONSE TO SUBPOENA DUCES TECUM [F.R.C.P. 45]

(5) years and TENET HEALTHCARE.

Category 10:
All DOCUMENTS or COMMUNICATIONS with the AMERICAN ACADEMY OF
EMERGENCY MEDICINE PHYSICIANS CONCERNING the putting of contracts out for bid
at eleven of its hospitals in California, to replace their emergency medicine, anesthesiology, and
hospitalist groups in or around 2014.

Category 11:
All DOCUMENTS or COMMUNICATIONS with DEFENDANTS CONCERNING the putting
of contracts out for bid at eleven of its hospitals in California, to replace their emergency
medicine, anesthesiology, and hospitalist groups in or around 2014.

Respondent's responses and objections to these requests are included herewith as Exhibit
B to the Declaration of Gerald S. Richelson ("Richelson Decl.") also filed herewith.

Respondent's objections are boilerplate, including that the documents are not relevant,
may or may not contain privileged information (without identifying any documents withheld
based on privilege), that production is burdensome. (Exhibit B.)

As a threshold matter any document request must seek relevant documents. The
documents sought are directly relevant to Plaintiff's allegations that Envision engaged in the
CPOM in California by, among other things, offering the California Tenet hospitals something of
value – remuneration – to induce Tenet to enter into the exclusive emergency department
physician staffing agreements with the Envision-controlled medical groups. Envision offered to
California Tenet hospitals anesthesia services from its controlled anesthesiology medical groups
at a significant lower cost (subsidy) than hospitals would otherwise pay, if Tenet also entered
into the contract for exclusive emergency department staffing with Envision-controlled medical
groups.

California Business and Professions Code § 650 prohibits the "offer, delivery, receipt, or
acceptance of consideration to induce the referral of patients." California Welfare and
Institutions Code § 14107.2 similarly prohibits the offer or payment or remuneration for referrals
of patients from a physician or institution that treats Medi-Cal beneficiaries. This significantly
lower or waived anesthesia subsidy constitutes an unlawful kickback in exchange for patient
referrals (from Tenet hospitals to the Envision-controlled emergency physician groups).
Envision's offering of kickbacks to Tenet is also a violation of California Corporations Code §

-8-

13408.5 which bars the formation of professional corporations "so as to cause any violation of law, or any applicable rules and regulations, relating to fee-splitting, kickbacks, or other similar practices by physicians and surgeons or psychologists, including, but not limited to, Section 650 or subdivision (e) of Section 2960 of the Business and Professions Code." In other words, there are numerous ways in which Envision's offer and Tenet's acceptance of such an arrangement violates California laws, including the ban on the CPOM, and forms the basis of Petitioner's California Business and Professions Code § 17200 claim against Envision.

While Respondent has asserted these boilerplate objections in writing, Respondent has in subsequent meet and confer communications never insisted that the documents sought are not relevant or discoverable. Respondent has primarily lamented that the act of searching its custodian's email in boxes with keywords and needing to perform a privilege review was burdensome, and that some of these documents, particularly the communications with Envision, could be obtained from Envision, a party to the litigation. However, Petitioner has been simultaneously engaged in extensive, at minimum weekly, meet and confer discussions with Envision regarding Envision's failure to produce the same records. Petitioner has also involved a magistrate judge of the Northern District of California, as is the prerequisite to bringing a motion to compel in that court. Petitioner, as the party with the burden of proof in the Underlying Action and time running out for fact discovery, cannot be put in a position of parties and non-parties shirking their discovery obligations and pointing fingers to the other as the responsible party to produce the documents.

### 3.   Meet and confer efforts among Petitioner and Respondent

Counsel for Petitioner has engaged in an extensive and robust meet and confer effort with Respondent's counsel, over the course of three (3) months, in an attempt to ensure Respondent's compliance with the Subpoena without the necessity of court intervention. On November 23, 2022, Petitioner served on Respondent a Subpoena for Production of Business Records ("Subpoena"), which included eleven categories of documents. As such, responses were due from Tenet on December 28, 2022. (Richelson Decl. ¶ 8, Ex. A.) On December 1, 2022, counsel for Respondent served responses and objections to the Subpoena via e-mail, asserting duplicative

NOTICE OF MOTION AND MOTION TO COMPEL TENET HEALTHCARE CORPORATION TO PRODUCE DOCUMENTS IN RESPONSE TO SUBPOENA DUCES TECUM [F.R.C.P. 45]

boilerplate objections to all eleven categories of documents, and agreeing only to search for and produce two categories of documents. (Richelson Decl. ¶ 9, Ex. B.) On December 27, 2022, Petitioner sent a meet and confer letter to counsel for Respondent, outlining Respondent's failure to comply with the FRCP. (Richelson Decl. ¶ 10, Ex. C.) Specifically, Tenet failed to describe the documents it intended to withhold on the basis of privilege and refused to produce documents on the grounds the documents were equally available from the parties. (Id.)

On December 28, 2022, Respondent served 23 pages of documents along with a cover letter, indicating that the 23 pages were only responsive to one of the eleven categories of documents demanded by Plaintiff. (Richelson Decl. ¶ 11, Ex. D.) On or about January 3, 2023, and January 6, 2023, counsel for Petitioner and Respondent met and conferred via videoconference, and, based on Respondent's status as a third party and in anticipation of a robust production of documents from Defendants that needed only to be supplemented by Respondent, counsel came to mutual agreement to (i) temporarily defer Respondent's processing of documents until discovery responses from Defendants were received, (ii) temporarily allow Respondent to restrict searches for documents to the four Tenet hospitals identified in Plaintiff's complaint and within the four year statute of limitation, and (iii) assist Respondent in its search by Petitioner providing Respondent with an initial list of search terms. (Richelson Decl. ¶ 12.) Counsel for Petitioner emphasized several times that the custodians of the relevant e-mail communications are in the best position to know the relevant search terms and deal terminology they used. (Id.)

On January 10, 2023, Respondent served 24 additional pages of documents along with a cover letter, indicating that the seven pages were only responsive to the second of the eleven categories of documents demanded by Petitioner. (Richelson Decl. ¶ 13, Ex. E.) On or about January 24, 2023, counsel for Petitioner and Respondent again spoke via video conference. (Richelson Decl. ¶ 14.) Petitioner's counsel informed Respondent's counsel that because Defendants were being slow and unreasonably restrictive in their production of documents, Petitioner could no longer temporarily defer Tenet's processing of documents. (Id.) Respondent's counsel explained essentially that it had secured custody of the e-mail inboxes of three custodians, but not employed any measures to target their review of the e-mails for relevancy and privilege.

NOTICE OF MOTION AND MOTION TO COMPEL TENET HEALTHCARE CORPORATION TO PRODUCE DOCUMENTS IN RESPONSE TO SUBPOENA DUCES TECUM [F.R.C.P. 45]

(Id.) Petitioner again agreed to Respondent's request to provide general search terms. (Id.) Following the telephone call with counsel for Respondent, Petitioner sent a meet and confer letter identifying search terms to aid Respondent in locating responsive documents. (Richelson Decl. ¶ 15, Ex. F.)

On January 26, 2023, Respondent sent a meet and confer letter acknowledging receipt of the search terms my office provided, and indicating that it began running the terms across data. (Richelson Decl. ¶ 16, Ex. G.) On February 7, 2023, Petitioner emailed Respondent requesting a description of the documents Petitioner should expect to find in the initial tranche to be produced on February 10, 2023, and whether Respondent would complete its review and production of documents by February 17, 2023. (Richelson Decl. ¶ 17, Ex. H.) Respondent responded the next day that it could not provide a final view of what documents its production will include, nor be able to complete the production by February 17, 2023. (Richelson Decl. ¶ 18, Ex. I.) On that same day, February 8, 2023, counsel for Petitioner inquired about the total number of documents Respondent was reviewing, and the pace at which review would likely be completed. (Richelson Decl. ¶ 18, Ex. J.) On February 10, 2023, counsel for Respondent served 97 additional pages of documents along with a cover letter. (Richelson Decl. ¶ 19, Ex. K.) However, unlike previous cover letters provided by counsel for Respondent, the February 10, 2023 cover letter failed to identify which documents are responsive to which category of information requested. (Id.)

The document production contained only approximately 100 pages of largely perfunctory scheduling emails. (Richelson Decl. ¶ 20.) Upon receipt of the cover letter identified above, Petitioner again asked Respondent to identify how many documents they were reviewing and the pace at which they were progressing, and requesting they provide a response by the end of the day on the following Monday. (Richelson Decl. ¶ 20, Ex. L.) There was no response to the February 10, 2023 inquiry. (Richelson Decl. ¶ 21.) On February 23, 2023, Petitioner followed up to again confirm how many documents Respondent still needed to review to produce responsive documents, and when the production could be completed. (Id.) Petitioner's counsel emphasized in this correspondence that three months passed since the subpoena was originally served and Tenet still could not answer that question. (Id., Ex. M.) Petitioner's counsel also pointed out that

-11-

with the fact discovery cut-off approaching in July, Petitioner could no longer wait to enforce the Subpoena and would seek court intervention. (Id., Ex. M.) Counsel made a final request for Respondent to provide a reasonable deadline that it could complete its production by the following day. (Id., Ex. M.) The following day, February 24, 2023, Respondent produced further documents and its counsel stated that "we plan to produce the remainder of any communications with Envision or AAEMPG related to the four hospitals by next Friday" (March 3, 2023). (Id., Ex. M.) The response did not provide the requested confirmation that Respondent will produce all outstanding responsive documents, not only the limited scope of documents Respondent unilaterally decided to produce. (Id.) The same day, Petitioner's counsel responded with a request that Respondent provide amended responses to the Subpoena, since the original responses were not accurate. (Id., Ex. M.) The original responses indicated Respondent was not going to produce more than a handful of documents. (Id.) Counsel for Petitioner requested that Respondent amend its responses to indicate to which requests it would produce responsive documents since otherwise it would be impossible for Petitioner to evaluate whether Respondent is complying with its obligations under the Subpoena. (Id., Ex. M.) Petitioner has not received a response to that inquiry to date. (Id.)

On March 3, 2023, Tenet's counsel finally responded stating "We have completed review of the documents within the parameters we discussed: emails of the two custodians (Bryan Rogers and Frederick Voltaire) that are related to the four hospitals mentioned in the complaint within the last four years." (Richelson Decl. ¶ 22, Ex. N.) Petitioner agreed that Tenet could commence and prioritize production of the emails from the principal individuals of Tenet involved in the negotiations with Envision regarding those four Tenet hospitals expressly identified in the complaint. (Id.) Notably, Tenet's counsel communicated that these custodians included Frederick Voltaire and Jay Krishnaswamy, not Bryan Rogers. (Id.) However, Petitioner never agreed that this limited scope initial production would complete Tenet's production obligation under the Subpoena. (Id.) Indeed, the document requests of the Subpoena are much broader than the limited scope Tenet claims it produced. (Id.) See category 2 of the Subpoena referring to all communications, all medical groups controlled by Envision. Further, it was expected that the

initial limitation in scope would allow Tenet to produce the documents in an expeditious manner, which did not occur. (Id.) Counsel for Tenet indicated that it would take over the weekend to process the production, and that they expected to make the production early the following week. (Id.) On March 6, 2023, Tenet's counsel produced additional documents within the limited scope of documents Tenet unilaterally decided to produce. (Id.) Tenet did not provide any indication that it will produce additional documents or any documents beyond those limitations in scope it self-imposed. (Id.)

Petitioner's robust meet and confer efforts with Respondent were unsuccessful in that over a course of months, Tenet has failed to produce more than a small portion of the documents responsive to the Subpoena and refuses to provide a clear indication that it will ever comply with the Subpoena in its entirety, and on what timeline. Further, Respondent's unilaterally imposed limitation of scope on the production of documents and the pace at which it is producing those documents is unreasonable and unacceptable, necessitating this motion.

### 4. **Legal standard on Motion to Compel**

Pursuant to F.R.C.P. 45(d)(2)(B)(i) after a subpoena is objected to, "[a]t any time, on notice to the commanded person, the serving party [of the subpoena] may move the court for the district where compliance is required for an order compelling production or inspection." An action to compel compliance with a subpoena must be filed in the district where compliance is required by the subpoena. "Because the Subpoena requires compliance in Dallas, the Motion to Quash and Motion to Compel are properly filed in this Court, which, as required by Rule 45(d), is the court in the district where compliance with the Subpoenas is required." *MetroPCS v. Thomas*, 327 F.R.D. 600, 606 (N.D. Tex. 2018).

The scope of discoverable information pursuant to a subpoena is broad:

> A non-party witness is subject to the same scope of discovery as a party is under Rule 34. Under Rule 34, the rule governing the production of documents between parties, the proper scope of discovery is as specified in Rule 26(b). FED. R. CIV. P. 34. Rule 26(b), in turn, permits the discovery of any non-privileged material: 'relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties'

NOTICE OF MOTION AND MOTION TO COMPEL TENET HEALTHCARE CORPORATION TO PRODUCE DOCUMENTS IN RESPONSE TO SUBPOENA DUCES TECUM [F.R.C.P. 45]

resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.'

*United Therapeutics Corp. v. Watson Labs.*, 200 F. Supp. 3d 272, 276-77 (D. Mass. 2016). (internal citations omitted.)

A third party's objections to a subpoena are evaluated under the same standards as a party to the case:

A non-party's Rule 45(d)(2)(B) objections to discovery requests in a subpoena are subject to the same prohibition on general or boiler-plate [or unsupported] objections and requirements that the objections must be made with specificity and that the responding party must explain and support its objections. [...] [A] non-party is subject to the requirements that an objection to a document request must, for each item or category, state [...] whether any responsive materials are being withheld on the basis of that objection; that an objection to part of a request must specify the part and permit inspection of the rest.

*MetroPCS v. Thomas*, 327 F.R.D. 600, 607 (N.D. Tex. 2018) (internal citations omitted.)

Three months have passed since Petitioner first served the Subpoena and Respondent still has not completed production of responsive documents and has not been able to indicate with any reliability how much review of documents Respondent has left and when it will be completed by. Respondent does not stand on the objections it served on December 1, 2022 (Richelson Decl., Ex. B). Indeed, Respondent has begun a sluggish "rolling production" of documents responsive to the Subpoena. Respondent seems to lean on its objection that the production is burdensome as an excuse to justify its slow production.

Petitioner can no longer afford to wait. Petitioner needs respondent to commit to a final and firm production date or have the Court order Respondent to do so, with attendant consequences for violating the court order. Just as Respondent has a duty to timely comply with the production demands of the Subpoena, so too does the Petitioner have an obligation to seek timely enforcement of the Subpoena. "In short, the text of Rule 45(d)(2)(B)(i) does not permit a litigant to sit on its hands indefinitely before filing a motion to compel the production of subpoenaed documents." *V5 Techs. v. Switch, Ltd.*, 332 F.R.D. 356, 362 (D. Nev. 2019). "Discovery is meant to be a balanced and, hopefully, front-loaded process, not one involving

-14-

deadline brinksmanship. *Id.* at 363. Petitioner cannot wait forever for Respondent to meet its compliance obligations under the Subpoena and must therefore seek enforcement of the Subpoena now.

**5.** __Production of the requested information is not unduly burdensome.__

Respondent objected to the Subpoena requests primarily on the grounds that complying with the requests would be unduly burdensome and that it should not be required to incur the time and expense of identifying, reviewing, selecting, and producing the responsive documents that is demanded by the Subpoena. (Richelson Decl., Ex. B.)

In presenting the argument that complying with the production request would be unduly burdensome, the subpoenaed party is required to produce evidence of the undue burden or cost.

> Where a subpoenaed party asserts undue burden, that party has the burden of proof to demonstrate 'that compliance with the subpoena would be unreasonable and oppressive. The party opposing discovery must show how the requested discovery was overly broad, burdensome, or oppressive by submitting affidavits or offering evidence revealing the nature of the burden. Whether a burdensome subpoena is reasonable must be determined according to the facts of the case, such as the party's need for the documents and the nature and importance of the litigation. To determine whether the subpoena presents an undue burden, [the Court] consider[s] the following factors: (1) relevance of the information requested; (2) the need of the party for the documents; (3) the breadth of the document request; (4) the time period covered by the request; (5) the particularity with which the party describes the requested documents; and (6) the burden imposed. Further, if the person to whom the document request is made is a non-party, the court may also consider the expense and inconvenience to the non-party.

*Am. Fed'n of Musicians of the United States & Can. v. Skodam Films, LLC*, 313 F.R.D. 39, 44 (N.D. Tex. 2015) (Internal citations and quotations omitted.)

Respondent will not be able to establish that compliance with the Subpoena will be unduly burdensome because the Subpoena asks for documents directly relevant to the allegations of the complaint. For example, Respondent confirmed only three (3) individuals whose e-mail

inboxes its counsel was searching to locate responsive documents and that due to document retention policies for the most part responsive documents exist only from 2020 and after.

6. **Conclusion**

For the foregoing reasons, Petitioner asks that the Court order Respondent to produce all documents responsive to the Subpoena no later than April 21, 2023, and that Respondent serve a privilege log no later than April 28, 2023, which identifies the documents Respondent withheld with sufficient particularity for Petitioner to evaluate the claim that it is indeed a privileged document that may be withheld from production.

Respectfully submitted,

KELLEY CLARKE, PC

By: _Matthew Clarke_

Matthew Clarke (Bar No. 24070965)
matt@kelleyclarke.com
Matthew P. Harper (Bar No. 24037777)
mharper@kelleyclarke.com
603 E. Broadway Street
Prosper, Texas 75078
Tel. (972) 253-4440
Fax. (866) 611-9852
**Attorneys for Petitioner American Academy of Emergency Physicians Group, Inc.**

NOTICE OF MOTION AND MOTION TO COMPEL TENET HEALTHCARE CORPORATION TO PRODUCE DOCUMENTS IN RESPONSE TO SUBPOENA DUCES TECUM [F.R.C.P. 45]